973 So.2d 973 (2008)
STATE of Louisiana, Appellee
v.
Ardic FIELDS, Appellant.
No. 42,761-KA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*975 Ardic Brian Fields, pro se.
Louisiana Appellate Project, by Carey J. Ellis, III, for Appellant.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, Dhu Thompson, Assistant District Attorneys, for Appellee.
Before DREW, MOORE and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Ardis Fields, was convicted by a jury of attempted second degree murder, La. R.S. 14:30.1 and La. R.S. 14:27. Fields was adjudicated a third felony habitual offender and sentenced to 100 years of imprisonment at hard labor without benefits. Fields now appeals, and for the following reasons, we affirm his conviction and sentence.

FACTS
Fields and Linda Alexander, the victim, began dating in 1998. In January 2000, Alexander ended the relationship. Fields was purportedly angered by the break-up and wanted to resume the relationship. On July 4, 2000, Alexander and her 14-year-old son, Steven, were home together when Fields entered the home, uninvited. Fields was angry and agitated, and after some time of conversation with Alexander, he pulled a knife out of his pocket and began stabbing her. Steven was able to run from the residence and call police. After stabbing Alexander over fifty times with his knife, Fields stopped and fled the scene in Alexander's vehicle. Later, Alexander's vehicle was recovered in Dallas, Texas, where Fields was also taken into custody.
Fields was originally charged by bill of information with attempted first degree murder. Subsequently, the state filed an amended bill of information, amending the charge to attempted second degree murder, pursuant to La. R.S. 14:30.1 and La. R.S. 14:27. Fields initially pled not guilty, then changed his plea to not guilty and not guilty by reason of insanity. Preliminary matters included a request for a sanity commission, which was granted by the trial court. Fields was initially found incompetent to proceed on July 19, 2004. On March 28, 2006, the trial court ruled that Fields was competent to proceed, and after examination by a second sanity commission and the related hearing, the trial court ruled that Fields was competent to proceed and was also competent at the time of the offense.
After a trial by jury, Fields was found guilty as charged. The state then filed a habitual offender bill of information charging Fields as a fourth felony habitual offender, to which he pled not guilty. His motions for post-verdict judgment of acquittal *976 and new trial were denied by the trial court prior to sentencing. After a habitual offender proceeding, the trial court found Fields to be a third felony habitual offender. Subsequently, Fields was sentenced to serve 100 years' imprisonment at hard labor without benefit of probation, parole or suspension of sentence. His motion to reconsider sentence was denied without a hearing, and this appeal ensued.

DISCUSSION
On appeal, Fields' appeal counsel brings two assignments of error, along with two assignments of error raised by Fields in his pro se capacity.

Sufficiency of the Evidence
In his first assignment of error, Fields argues that the evidence was insufficient to support the conviction of attempted second degree murder. Specifically, Fields maintains that the State failed to prove that he had the specific intent to kill, an element of the crime. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, XXXX-XXXX (La.02/28/96), 668 So.2d 1132; State v. Henson, 38,820 (La.App. 2d Cir.09/22/04), 882 So.2d 670. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Henson, supra. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam 36,118 (La. App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Henson, supra.
Fields was charged by amended bill of information with attempted second degree murder, violations of La. R.S. 14:27 and 14:30.1 A(1). Second degree murder is defined, in pertinent part, as ". . . the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1. In La. R.S. 14:27(A), "attempt" is defined, in pertinent part, as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense, intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Although second degree murder includes a specific intent to inflict great bodily harm, a conviction for attempted second degree murder requires a finding that the defendant had the specific intent to kill. State v. Butler, 322 So.2d 189 (La.1975); State v. Golson, 27,083 (La.App. *977 2d Cir.06/21/95), 658 So.2d 225, writ denied, XXXX-XXXX (La.10/10/97), 703 So.2d 600. Therefore, in the instant case, the state had the burden of proving that Fields had the specific intent to kill Alexander and that he committed an act for the purpose of accomplishing that goal.
Specific intent is that state of mind which exists when the circumstances indicate, that the offender actively desired the proscribed criminal consequences to follow his act or his failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). Specific intent may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Bishop, 2001-2548 (La.01/14/03), 835 So.2d 434; State v. Allen, 41,548 (La.App. 2d Cir.11/15/06), 942 So.2d 1244. Specific intent to kill can be implied by the intentional use of a deadly weapon such as a knife or a gun. State v. Templet, 2005-2623 (La.App. 1st Cir.08/16/06), 943 So.2d 412, writ denied, 2006-2203 (La.04/20/07), 954 So.2d 158. Finally, the determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Wilson, 42,440 (La.App. 2d Cir.09/19/07), 965 So.2d 992. In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Id., citing Jackson v. Virginia, supra; State v. Huizar, supra.
In the case sub judice, the state clearly met its burden of proving that Fields had the specific intent to kill Alexander, and he committed an act for the purpose of accomplishing that goal. According to Alexander, Fields actually expressed his intent to kill her with his knife. She explained at trial that when he initially grabbed her, he told her that since her son was going to call the police, he might as well kill her. Additionally, Fields' specific intent to kill Alexander can also be inferred from the general circumstances of the crime. First, the jurisprudence is clear that specific intent to kill can be implied by the intentional use of a deadly weapon such as a knifethe weapon Fields utilized against Alexander. Second, Fields' specific intent to kill is evidenced by the bloody and brutal nature of his actions. Fields, in a fit of anger, stabbed his victim over 50 times (resulting in over 1,000 stitches and staples)we find it unfathomable that he could have possessed anything other than a specific intent to kill Alexander. Therefore, considering the barbarous nature of the crime, along with Fields' statement to Alexander that he might as well kill her, the record more than supports the jury's finding of his specific intent to kill Alexander. This assignment is without merit.

Excessive Sentence
In his second assignment of error, Fields argues that the sentence imposed is excessive. In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.02/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis *978 for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App. 2d Cir.01/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.03/11/05), 896 So.2d 57, 2004-2380 (La.06/03/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hampton, supra. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277, writ denied, XXXX-XXXX (La.09/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.01/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App. 2d Cir.01/24/07), 948 So.2d 379.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Russell, 40,526 (La.App. 2d Cir.01/27/05), 920 So.2d 866, writ denied, XXXX-XXXX (La.09/29/06), 937 So.2d 851. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, XXXX-XXXX (La.06/03/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Estes, 42,093 (La.App. 2d Cir.05/09/07), 956 So.2d 779.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, XXXX-XXXX (La.05/16/00), 769 So.2d 1158.
On this record and considering the particular facts at hand, we do not find Fields' sentence of 100 years' imprisonment to be excessive. The record clearly supports the trial court's determination that Fields earned the maximum sentence, as he can clearly be classified as one of the worst offenders, and this offense, one of the worst offenses. When this crime and Fields' punishment are viewed in light of the harm done to society by violent recidivists, his 100-year hard labor sentence without benefits does, not shock the sense of justice. The trial court's sentence was not a manifest abuse of its discretion, and for the foregoing reasons, Fields' sentence is affirmed.

Pro Se Assignments of Error
In Fields' supplemental pro se appeal brief, he brings two assignments of error, related to various issues. First, he states that the trial court abused its discretion and committed manifest error in denying his motion to dismiss his appointed counsel, which was heard on August 7, 2006. Fields refers to and includes a copy of the transcript from that proceeding, which is not part of the appellate record. Review of this issue would be more appropriate later on a request for post-conviction relief; *979 therefore, we will not address it on appeal.
Fields also argues that the trial court erred in denying his motion to quash the indictment based upon the time limitations set forth in La. C. Cr. P. art. 578(2). He further argues that this court erred in denying his writ application pertinent to the motion to quash in writ no. 38,251-KW on October 16, 2003, and again in writ no. 41,951-KH on October 26, 2006, because we relied on the minute entries. He notes that the transcripts of the hearing on the motion to quash were not made part, of the record, which he argues supports his claim that the rulings of the trial court and this court were in error.
Although Fields is correct that the transcripts are not part of the appellate record, we stand by our previous rulings on his writ applications on this same issue. As we noted in our disposition in writ no. 38,251-KW, the court minutes, which are part of the record, support the trial court's ruling to deny the motion to quash. Prosecution against Fields was instituted on January 29, 2001. On January 14, 2003, Fields was present with counsel, the case was set for trial on April 7, 2003, and the case was continued until February 20, 2003. After this action, the state had a minimum of one year from the January 14, 2003 ruling in which to commence trial. La. C. Cr. P. art. 580; State v. Evans, 627 So.2d 664 (La.App. 2d Cir.1993). The March 26, 2003 motion to quash was filed within this one-year time period, i.e., the deadline by which the state had to commence Fields' trial had not been reached; thus, the motion was filed maturely and was properly denied. This assignment is therefore without merit.
In his second assignment of error, Fields argues that the trial court erred in denying his motion to quash the habitual offender bill. Specifically, he claims that without a transcript of the 1997 aggravated battery conviction, it cannot be determined that he was properly Boykinized for that offense. Fields argues that court minutes are insufficient proof because they merely reflect that he was advised of his rights as per Boykin v. Alabama. Fields concludes that his sentence is illegal and requires reversal as a result.
The state's burden of proof in habitual offender proceedings under La. R.S. 15:529.1 is stated in State v. Shelton, 621 So.2d 769 (La.1993):
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with *980 an articulated waiver of the three Boykin rights. [Footnote omitted.]
The Shelton court determined that it was appropriate to shift the burden to the defendant after the state makes the initial showing that the defendant made the guilty plea with the representation of counsel because there is a "presumption of regularity that attaches to final judgments." Id. at 778; State v. Zeigler, 41,617 (La.App. 2d Cir.12/20/06), 945 So.2d 946.
Applying the burden of proof set forth in Shelton to the facts of this case, we conclude that the state met its initial burden of proof. The minutes for the 1997 conviction show that the state proved the existence of the prior guilty plea and that Fields was represented by counsel when it was taken. Fields, however, has not met his subsequent burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Because Fields did not meet his subsequent burden of proof, the inquiry stops there. The state was not required to prove the constitutionality of the plea by producing, a "perfect" transcript. Therefore, the trial court did not err in denying Fields' motion to quash the habitual offender bill on this ground. So considering, this assignment is without merit.

Error Patent
Our error patent review of the record shows that the trial court imposed Fields' sentences immediately after the denial of his motions for new trial and post-verdict judgment of acquittal. There is no showing on the record that Field waived the delay required by La. C. Cr. P. art. 873. However, he did not complain of actual prejudice, so the error appears harmless. State v. Roberson, 40,809 (La.App. 2d Cir.04/19/06), 929 So.2d 789.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Ardic Fields are affirmed.
AFFIRMED.